IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia,                    :
                    Appellant            :
                                         :
        v.                               : No. 94 C.D. 2017
                                         : Argued:  October 19, 2017
Frank Zampogna                           :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE ROBERT SIMPSON, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION
BY PRESIDENT JUDGE LEAVITT                    FILED: December 27, 2017

        The City of Philadelphia (City) appeals an order of the Court of
Common Pleas of Philadelphia County, First Judicial District (trial court) granting
declaratory judgment in favor of a City employee, Frank Zampogna.  The trial court
held that Section 1720 of the Motor Vehicle Financial Responsibility Law, 75 Pa.
C.S. §1720, prohibited the City from subrogating its payment of Heart and Lung
Act[1] benefits to Zampogna from his third-party tort recovery.  For the reasons that
follow, we affirm the order of the trial court.

        The facts of this case are not in dispute.  On November 1, 2007,
Zampogna, a City police officer, was a passenger in a police cruiser participating in
a roadblock at the intersection of 22nd Street and Lehigh Avenue in Philadelphia.  A
private vehicle went through the police roadblock and collided with the cruiser
occupied by Zampogna.  As a result, Zampogna suffered serious injuries and was
unable to work as a police officer for several years.  The City, which is self-insured
for workers' compensation, issued a Notice of Compensation Payable (NCP)

_____

[1] Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§637-638.

accepting liability for the injury. The NCP also stated that the City was paying Zampogna Heart and Lung Act benefits in lieu of workers' compensation benefits. Reproduced Record at 46a (R.R. __). From November 2, 2007, to September 27, 2011, the City paid Zampogna a total of $286,447.77 in Heart and Lung benefits.[2]

On November 3, 2009, Zampogna filed a tort action against the driver of the vehicle involved in the accident. The City petitioned to intervene in Zampogna's tort action to protect the subrogation lien it intended to assert against any recovery. The third-party tort action settled in 2014 for $245,000, which was placed in escrow while the parties litigated the City's entitlement to its asserted lien. On April 9, 2015, the City initiated a declaratory judgment action to establish its right to recover the Heart and Lung Act benefits it paid to Zampogna from his settlement.

A trial was conducted on August 1, 2016, after which the trial court granted judgment in favor of Zampogna. It held that Section 1720 of the Motor Vehicle Financial Responsibility Law prohibited the City's subrogation against Zampogna's tort recovery. The City appealed the judgment.

We begin with a review of the three statutes governing a public employer's subrogation against an employee's third-party recovery for his work injury caused by a motor vehicle accident. The three statutes are: the Workers' Compensation Act,[3] the Heart and Lung Act, and the Motor Vehicle Financial Responsibility Law.[4]

---

[2] That total consisted of $236,050.43 in salary continuation and $50,397.34 in medical benefits. Joint Stipulation of Facts, ¶7.

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2708.

[4] 75 Pa. C.S. §§1701-1799.7.

The Workers' Compensation Act compensates employees who are injured at work for their medical bills and lost wages. Where a work injury prevents an employee from performing his pre-injury job, he is entitled to total disability benefits in the amount of two-thirds of his pre-injury wages. Section 306(a) of the Workers' Compensation Act, 77 P.S. §511. Both public and private employers are subject to the requirements of the Workers' Compensation Act.

The statute commonly referred to as the "Heart and Lung Act" applies only to public employers. It requires the payment of full salary to police officers and other public safety employees who are temporarily unable to perform their job because of a work injury. Section 1 of the Heart and Lung Act, 53 P.S. §637. This more favorable wage loss benefit assures "those undertaking dangerous employment in certain institutions that they will continue to receive full income when they are injured while performing their duties [and] by offering such assurance, the Commonwealth can attract employees to and keep them in the essential and dangerous jobs." *McWreath v. Department of Public Welfare*, 26 A.3d 1251, 1255 (Pa. Cmwlth. 2011). Police officers and public safety employees are also entitled to benefits under the Workers' Compensation Act. However, "any workmen's compensation, received or collected" by a public employee collecting Heart and Lung benefits "shall be turned over to the [public employer] and paid into the treasury thereof[.]" Section 1(a) of the Heart and Lung Act, 53 P.S. §637(a). Self-insured public employers that pay Heart and Lung benefits do not make workers' compensation payments because they would simply be returned to the employer. *Wisniewski v. Workmen's Compensation Appeal Board (City of Pittsburgh)*, 621 A.2d 1111, 1113 (Pa. Cmwlth. 1993). Nevertheless, self-insured public employers issue a notice of compensation payable to employees receiving Heart and Lung

3

benefits. *Stermel v. Workers' Compensation Appeal Board (City of Philadelphia)*, 103 A.3d 876, 878 (Pa. Cmwlth. 2014).

Where a work injury is caused by a third party, Section 319 of the Workers' Compensation Act[5] states that "the employer shall be subrogated to the right of the employee … against [a] third party to the extent of compensation payable" under the Act. 77 P.S. §671. The Heart and Lung Act does not contain a similar provision, but it has long been understood that the common law authorizes public employers to subrogate their Heart and Lung payments from the employee's third party tort recovery. *See, e.g., Topelski v. Universal South Side Autos, Inc.*, 180 A.2d 414, 420 (Pa. 1962). The public policy for subrogation has been explained as follows:

> First, it prevents double recovery for the same injury by the claimant. Second, it prevents the employer from having to make compensation payments which resulted from the negligence of a third party. Finally, it prevents a third party from escaping liability for his negligence.

---

[5] Section 319 states, in relevant part, as follows:

> Where the compensable injury is caused in whole or in part by the act or omission of a third party, *the employer shall be subrogated to the right of the employe, his personal representative, his estate or his dependents, against such third party to the extent of the compensation payable under this article by the employer*; reasonable attorney's fees and other proper disbursements incurred in obtaining a recovery or in effecting a compromise settlement shall be prorated between the employer and employe, his personal representative, his estate or his dependents. The employer shall pay that proportion of the attorney's fees and other proper disbursements that the amount of compensation paid or payable at the time of recovery or settlement bears to the total recovery or settlement. Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe, his personal representative, his estate or his dependents, and shall be treated as an advance payment by the employer on account of any future instalments of compensation.

77 P.S. §671 (emphasis added).

4

*Murphy v. Workers' Compensation Appeal Board (City of Philadelphia)*, 871 A.2d 312, 317 (Pa. Cmwlth. 2005).

The 1984 enactment of the Motor Vehicle Financial Responsibility Law upended this paradigm on subrogation, at least with respect to work injuries arising from motor vehicle accidents. Section 1720 of the Law expressly abolished an employer's ability to subrogate workers' compensation payments. Section 1720, as enacted in 1984, stated as follows:

> In actions arising out of the maintenance or use of a motor vehicle, there shall be *no right of subrogation or reimbursement from a claimant's tort recovery with respect to workers' compensation benefits*, benefits available under Section 1711 (relating to required benefits), 1712 (relating to availability of benefits) or 1715 (relating to availability of adequate limits) *or benefits in lieu thereof paid or payable* under Section 1719 (relating to coordination of benefits).

Act of February 12, 1984, P.L. 53, No. 12, §3 (emphasis added).

As noted, the goal of subrogation is to prevent double recovery for a single loss. The Motor Vehicle Financial Responsibility Law is also designed to prevent double recovery by those involved in work-related motor vehicle accidents. Section 1722 of the Motor Vehicle Financial Responsibility Law prohibits a plaintiff from including benefits, such as workers' compensation, in his claim for damages from the third party tortfeasor. Section 1722 states:

> In any action for damages against a tortfeasor, or in any uninsured or underinsured motorist proceeding, arising out of the maintenance or use of a motor vehicle, *a person who is eligible to receive benefits under the coverages set forth in this subchapter, or workers' compensation, or any program, group contract or other arrangement* for payment of benefits as defined in section 1719 (relating to coordination of benefits) *shall be precluded from recovering the amount of benefits paid* or payable under this subchapter, or workers' compensation, or any

5

program, group contract or other arrangement for payment of benefits as defined in section 1719.

75 Pa. C.S. §1722 (emphasis added). By precluding an employee injured in a work-related motor vehicle accident from pleading workers' compensation or Heart and Lung benefits as an item of damages in his tort action, the employee must look solely to the employer to be made whole. Thus, the tort victim cannot recover twice.

In short, Section 1720 and 1722 work in tandem to shift the cost of work-related motor vehicle accidents from the motor vehicle insurer to the workers' compensation insurer. The object was to reduce the cost of motor vehicle insurance by making the workers' compensation carrier the primary insurer for injuries arising from work-related motor vehicle accidents.

However, in 1993, the legislature revisited this paradigm with the Act of July 2, 1993, P.L. 190, No. 44 (Act 44), which amended the Workers' Compensation Act and the Motor Vehicle Financial Responsibility Law. Section 25(b) of Act 44 reinstated an employer's right of subrogation for workers' compensation benefits paid to a claimant whose work injury resulted from a motor vehicle accident. Section 25(b) states:

> The provisions of 75 Pa. C.S. §§1720 and 1722 are repealed insofar as they relate to workers' compensation payments or other benefits under the Workers' Compensation Act.

Act of July 2, 1993, P.L. 190, No. 44, §25(b). Accordingly, under Act 44, a plaintiff injured in a work-related motor vehicle accident may include workers' compensation payments as an item of damages sought against the tortfeasor, and his employer may subrogate the amount of workers' compensation from that tort recovery. This shifted the cost for work-related motor vehicle accidents from the workers' compensation carrier back to the motor vehicle insurer, as was the case prior to 1984.

6

Notably, Act 44 reinstated a public employer's right to subrogate workers' compensation benefits from third-party tort recoveries by repealing the contrary language in Sections 1720 and 1722 of the Motor Vehicle Financial Responsibility Law. However, Act 44 did not revise the language of Sections 1720 and 1722, which continue to read as though there is no right to subrogation of workers' compensation benefits against a tort recovery arising from a work-related motor vehicle accident.

Act 44 expressly addressed workers' compensation benefits, not Heart and Lung benefits. Act 44 is silent on Heart and Lung payments and the public employer's ability to subrogate. This silence led to litigation on whether a public employer may subrogate Heart and Lung Act benefits from third-party tort recoveries. We review the three leading cases *ad seriatim*.

In *Fulmer v. Pennsylvania State Police*, 647 A.2d 616 (Pa. Cmwlth. 1994), a Pennsylvania State Police trooper sustained serious injuries in a motor vehicle accident while on duty. During his temporary incapacitation, the trooper received $22,442.63 in Heart and Lung Act benefits from his employer. In 1989, prior to the enactment of Act 44, the trooper instituted a personal injury action against the driver of the other vehicle in the accident and recovered a settlement. The State Police sought to subrogate the amount it paid the trooper in Heart and Lung benefits from the trooper's tort settlement. In response, the trooper filed a declaratory judgment action requesting this Court to rule that Section 1720 of the Motor Vehicle Financial Responsibility Law precluded the State Police from seeking reimbursement of its payments made under the Heart and Lung Act.

Notably, in 1990, the legislature amended the 1984 version of Section 1720 to read as follows:

> In actions arising out of the maintenance or use of a motor vehicle, *there shall be no right of subrogation* or reimbursement from a claimant's tort recovery with respect to workers' compensation benefits, benefits available under Section 1711 (relating to required benefits), 1712 (relating to availability of benefits) or 1715 (relating to availability of adequate limits) *or benefits paid or payable by a program, group contract or other arrangement whether primary or excess* under section 1719 (relating to coordination of benefits).

75 Pa. C.S. §1720 (amended by the Act of February 7, 1990, P.L. 11, No. 6, §9 (emphasis added). The amendment removed the language "or benefits in lieu thereof," *i.e.,* a tort recovery, and replaced it with "or benefits paid or payable by a program, group contract or other arrangement whether primary or excess …." *Id.* Because the trooper initiated his tort action in 1989, we used the 1984 version of Section 1720 to decide whether the employer's Heart and Lung Act payments were subrogable. We held that these benefits could not be subrogated, reasoning as follows:

> After reviewing the language of Section 1720 of the [Motor Vehicle Financial Responsibility Law] and its related sections, and taking into account the history and purpose of the [Motor Vehicle Financial Responsibility Law], *we believe that Heart and Lung Act benefits fall within the "benefits in lieu thereof paid or payable" language of this section*. Benefits received under the Heart and Lung Act effectively replace workmen's compensation benefits for those employees covered by its provisions. These benefits provided petitioner with a full rate of salary during his temporary incapacity and required him to turn over all workmen's compensation benefits he received to the [State Police]. *On its face, the contested language of Section 1720 attempts to include all those potential benefits which may have been too numerous to mention*.

*Fulmer*, 647 A.2d at 619 (emphasis added).

8

We further stated that this result was required under either the 1984 or the 1990 version of Section 1720. We explained as follows:

> [W]e agree that the language of the pre-amendment version of Section 1720 should control in this case, [however] we do not view this factor as determinative of the outcome, believing this change of language to be more of a clarification than an alteration. *Therefore, any result we may reach should apply to both versions of the statute.*

*Id.* at 618 (emphasis added).[6] This Court specifically noted that the "inclusive nature of the words 'or other arrangement' does seem to support [the] contention" that the anti-subrogation mandate in Section 1720 applied to Heart and Lung benefits. *Id.*

Our Supreme Court next addressed the effect of Act 44 on the subrogation of Heart and Lung Act benefits in *Oliver v. City of Pittsburgh*, 11 A.3d 960 (Pa. 2011).[7] In *Oliver*, a police officer received $848 in Heart and Lung Act benefits as a result of a work-related motor vehicle accident. The officer recovered against the tortfeasor, and her employer asserted a subrogation claim against her

---

[6] We further noted as follows:

> This Court is aware that in an act promulgating major revisions to The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §1–1031, the legislature repealed 75 Pa.C.S. §1720 insofar as it relates to worker's compensation payments. Section 25(b) of the Act of July 2, 1993, P.L. 190, No. 44. (hereinafter referred to as Act 44). Legislation affecting substantive law will not be applied retroactively unless expressly declared in the act. *Universal Cyclops Steel Corp. v. Krawczynski*, [] 305 A.2d 757 ([Pa. Cmwlth.] 1973). The question of whether an employer is entitled to subrogation is not one of procedure but of substantive law. *Bell v. Kloppers Co., Inc.*, [] 392 A.2d 1380 ([Pa.] 1978). Thus, Act 44 has no impact on this case. In addition, we express no opinion on the effect of Section 25(b) of Act 44 on the Heart and Lung Act in a case arising after the effective date of Act 44.

*Fulmer*, 647 A.2d at 618 n.3.

[7] The Supreme Court granted review because of facially conflicting pronouncements of law in *Brown v. Rosenberger*, 723 A.2d 745, 747 (Pa. Cmwlth. 1999), and *City of Pittsburgh v. Workers' Compensation Appeal Board (Williams)*, 810 A.2d 760, 762 n.5 (Pa. Cmwlth. 2002).

9

recovery. The employer argued that Section 25(b) of Act 44 restored subrogation not only for workers' compensation benefits but also for Heart and Lung benefits.

In response, the officer commenced a declaratory judgment action, asserting that Act 44 had no effect on Heart and Lung Act benefits, and the trial court granted judgment in the officer's favor. This Court reversed, holding that Act 44 reinstated the employer's right to subrogate its payment of Heart and Lung benefits against the employee's third-party recovery. *Oliver v. City of Pittsburgh*, 977 A.2d 1232 (Pa. Cmwlth. 2009). We reasoned that there was "no reasonable basis" for treating the payment of Heart and Lung benefits differently from the payment of workers' compensation. *Id.* at 1239.

Our Supreme Court reversed. It held that Section 25(b) of Act 44 restored an employer's right of subrogation only "insofar as [it] relate[d] to workers' compensation payments or other benefits under the Workers' Compensation Act." *Oliver*, 11 A.3d at 966. Section 25(b) did not mention the Heart and Lung Act and, therefore, it did not "impact any anti-subrogation mandates pertaining to [Heart and Lung Act] benefits." *Id.* Because the statutory language was plain and unambiguous, it was error for this Court to resort to principles of statutory construction that are to be employed only where a statute is ambiguous. The Supreme Court held that Act 44 did not affect the anti-subrogation mandate of Section 1720 with respect to Heart and Lung Act benefits; thus, they are beyond the reach of subrogation by a public employer. *Id.*[8]

---

[8] The City also argued that the 1990 amendment to the Motor Vehicle Financial Responsibility Law restored an employer's right to subrogation concerning benefits under the Heart and Lung Act. However, because the City raised this issue for the first time on appeal to the Supreme Court, the Court held that it was not properly preserved, and declined to address it. *Oliver*, 11 A.3d at 964-65. This is the argument the City presents today.

10

The most recent ruling on this issue was in *Stermel*, 103 A.3d 876. In that case, a police officer's vehicle was rear ended by an intoxicated driver and the officer sustained an injury that caused him to miss 21 weeks of work. The employer, the City of Philadelphia, issued a NCP acknowledging the work injury and stating that it would pay Heart and Lung benefits in lieu of workers' compensation. The officer pursued a third-party tort claim against the driver and the tavern that served him alcohol; the claim settled for $100,000. The City filed a petition to review compensation benefit offset, seeking subrogation against the officer's third party recovery for the amount it paid in Heart and Lung benefits. The matter was assigned to a workers' compensation judge, who concluded that the employer could subrogate the Heart and Lung benefits it paid the officer. On appeal, the Board reversed, relying on the Supreme Court's recent decision in *Oliver*, 11 A.3d 960. After a rehearing, the Board reversed itself. The Board distinguished *Oliver* and found it not dispositive.

In distinguishing *Oliver*, the Board reasoned that in *Oliver* there was no evidence that the claimant had received workers' compensation benefits. Further, the case was initiated in a court of common pleas, not in a workers' compensation proceeding. Finally, *Oliver* did not address the interplay between the Motor Vehicle Financial Responsibility Law, Heart and Lung Act, and Workers' Compensation Act.

The Board decided that two-thirds of the Heart and Lung benefits paid by the City actually represented workers' compensation benefits, which can be subrogated under Act 44. The Board noted that had the City purchased a workers' compensation policy, the carrier would have returned all workers' compensation

11

payments to the City. It made no sense to the Board that the City could not recover these payments simply because it was self-insured.

>On appeal, we reversed the Board, explaining that:

>>the Motor Vehicle Financial Responsibility Law [] prohibits a plaintiff from including as an element of damages payments received in the form of workers' compensation or other "benefits paid or payable by a program ... or other arrangement." 75 Pa.C.S. §1720. *This language "benefits paid or payable by a program" has been construed to include the program by which Heart and Lung benefits are paid*. *Fulmer*, 647 A.2d at 618–19.

*Stermel*, 103 A.3d at 885 (emphasis added). We rejected the Board's attempt to distinguish *Oliver* on the stated grounds that the public employer had not issued a NCP. We explained that an employer's issuance of a NCP "does not transform Heart and Lung Benefits into workers' compensation; they are separate." *Id.* at 883. We further explained that "[f]or its own reasons, the General Assembly has decided to treat Heart and Lung benefits differently, at least with respect to subrogation from a claimant's tort recovery arising from a motor vehicle accident." *Id.* at 883-84.

With this summary of the relevant statutes and case law precedent, we turn to the instant appeal.[9] The City asserts the 1990 amendment to Section 1720 of the Motor Vehicle Financial Responsibility Law reinstated a public employer's right to subrogate its payment of Heart and Lung benefits. It maintains that although *Fulmer*, *Oliver* and *Stermel* presumed that Heart and Lung Act benefits cannot be subrogated under Section 1720 of the Motor Vehicle Financial Responsibility Law, those cases did not specifically analyze the language of the 1990 amendment to

---

[9] An appellate court's standard of review in a declaratory judgment action determines whether the trial court committed a clear abuse of discretion or an error of law. *Prillo v. Vanco*, 74 A.3d 366, 368 n.5 (Pa. Cmwlth. 2013). In a case where the issues are questions of law, the standard of review is *de novo*. The scope of review is plenary. *Id.*

12

Section 1720.  Accordingly, this case presents an issue of first impression.  The City distinguishes *Fulmer*, *Oliver*, and *Stermel* as follows.

In *Fulmer*, this Court stated that the 1990 amendment to Section 1720 was "more of a clarification than an alteration," which continues to prohibit the subrogation of Heart and Lung benefits.  *Fulmer*, 647 A.2d at 618.  Because *Fulmer* was decided under the 1984 version, the City contends that this language is *obiter dictum* with respect to the 1990 version of Section 1720.  *See Valley Township v. City of Coatesville*, 894 A.2d 885, 889 (Pa. Cmwlth. 2006) (court opinion not essential to the decision is *dicta* and has no precedential value).  Moreover, the City notes that this Court's offhand comment in *Fulmer* was not accompanied by any statutory analysis.  Thus, *Fulmer* stands only for the proposition that the 1984 version of Section 1720 prohibited employer subrogation of Heart and Lung benefits.

With respect to *Oliver*, the City argues that it has no bearing on its statutory construction argument because the Supreme Court considered only the effect of Act 44 on Section 1720.  *Oliver*, 11 A.3d at 966.  By contrast, here, the City focuses exclusively on the 1990 amendment to Section 1720 and whether it included Heart and Lung benefits within the anti-subrogation mandate.  Notably, the court in *Oliver* declined to address this very argument because it had not been preserved.  *Id.* at 964-65.

With respect to *Stermel*, the City asserts that as in *Fulmer*, the precise meaning of the 1990 amendment to Section 1720 was not addressed.  *Stermel* simply observed that this "Court has interpreted both versions of Section 1720 to designate Heart and Lung benefits as a type of benefit not eligible for subrogation where the injury arises from a motor vehicle accident."  *Stermel*, 103 A.3d at 879 (citing

13

*Fulmer*, 647 A.2d at 618-19)). The City notes that this observation is based upon the *dicta* in *Fulmer* and argues that "repetition does not elevate *obiter dicta* to the level of binding precedent." *Commonwealth v. Singley*, 868 A.2d 403, 409 (Pa. 2005).

Zampogna acknowledges that *Fulmer's* discussion of the 1990 version of Section 1720 constitutes *dicta*. However, he contends that the *dicta* in *Fulmer* was confirmed in *Stermel* and, thus, became binding precedent. Zampogna also directs our attention to *Housing and Redevelopment Insurance Exchange v. Michaels*, 2012 WL 1985926 (Lackawanna Co. C.P., No. 11 CV 6121, filed May 25, 2012), which held that the 1990 amendatory language "program, group contract or other arrangement" in Section 1720 was intended to expand, not constrict, the applicability of the anti-subrogation mandate as it existed in 1984.

Zampogna explains that in *Oliver*, the Supreme Court considered whether Act 44's restoration of the employer's subrogation rights with respect to workers' compensation benefits extended to Heart and Lung Act payments. This consideration would make little sense if the Supreme Court believed that the 1990 amendment to Section 1720 of the Motor Vehicle Financial Responsibility Law had already restored the employer's right of subrogation for Heart and Lung Act benefits, while continuing the anti-subrogation mandate for workers' compensation. Likewise, in *Stermel*, this Court stated that:

> Section 25(b) of Act 44 changed the Section 1720 paradigm only for workers' compensation benefits, not Heart and Lung benefits. *This means Claimant continued to be 'precluded' from recovering the amount of benefits paid under the Heart and Lung Act from the responsible tortfeasors. There can be no subrogation out of an award that does not include these benefits.*

14

*Stermel*, 103 A.3d at 885 (internal quotations omitted) (emphasis added). By using the word "continued," *Stermel* affirmed that prior to Act 44, a claimant could not recover, and an employer could not subrogate, benefits paid pursuant to the Heart and Lung Act.

*Oliver* limited its holding to Act 44. The City is correct that case law precedent has not squarely considered the meaning of the 1990 amendment of Section 1720. We do so now.

Section 1720 of the Motor Vehicle Financial Responsibility Law states as follows:

> In actions arising out of the maintenance or use of a motor vehicle, there shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to workers' compensation benefits, benefits available under Section 1711 (relating to required benefits), 1712 (relating to availability of benefits) or 1715 (relating to availability of adequate limits) *or benefits paid or payable by a program, group contract or other arrangement whether primary or excess under section 1719 (relating to coordination of benefits)*.

75 Pa. C.S. §1720 (emphasis added). The final phrase "benefits paid or payable by a program, group contract or other arrangement whether primary or excess" replaced the 1984 language that read "benefits in lieu thereof paid or payable." The City offers several reasons to support its contention that the removal of the "in lieu thereof" language from the 1984 version of Section 1720 restored its right to subrogate Heart and Lung benefits from a tort award arising from a work-related motor vehicle accident.

First, the City notes that Section 1720 refers to Sections 1711, 1712, 1715 and 1719 of the Motor Vehicle Financial Responsibility Law. None of these provisions of the Motor Vehicle Financial Responsibility Law mention the Heart and

15

Lung Act or any other mandatory statutory compensation scheme. Therefore, the anti-subrogation mandate applies only to benefits paid under private insurance policies.

Second, *Fulmer, Oliver* and *Stermel* focused on the words "benefits paid or payable by a program, group contract or other arrangement," which is incomplete. The City notes that the final sentence of Section 1720 states "benefits paid or payable by a program, group contract or other arrangement *whether primary or excess under Section 1719 (relating to coordination of benefits)*." Neither *Fulmer* nor *Stermel* considered the text of Section 1719, which states as follows:

> (a) General rule.--Except for workers' compensation, a policy of insurance issued or delivered pursuant to this subchapter shall be primary. *Any program, group contract or other arrangement for payment of benefits* such as described in section 1711 (relating to required benefits) 1712(1) and (2) (relating to availability of benefits) or 1715 (relating to availability of adequate limits) shall be construed to contain a provision that all benefits provided therein *shall be in excess of and not in duplication of any valid and collectible first party benefits* provided in section 1711, 1712 or 1715 or workers' compensation.

> (b) Definition.--As used in this section the term "*program, group contract or other arrangement*" includes, but is not limited to, benefits payable by a hospital plan corporation or a professional health service corporation subject to 40 Pa. C.S. Ch. 61 (relating to hospital plan corporations) or 63 (relating to professional health services plan corporations).

75 Pa. C.S. §1719 (emphasis added).

The City argues that the Section 1719(b) definition of "program, group contract or other arrangement" cannot be read to include Heart and Lung Act benefits, which bear no similarity to Blue Cross/Blue Shield coverage. Under the doctrine *ejusdem generis*, the phrase "includes, but is not limited to" in Section

16

1720 requires that a "program, group contract or other arrangement" must be similar to a health insurance policy issued by Blue Cross and Blue Shield. *S.A. by H.O. v. Pittsburgh Public School District*, 160 A.3d 940, 946 (Pa. Cmwlth. 2017). Accordingly, the City argues that Heart and Lung benefits fall outside the "included but not limited" list of "programs." The City offers an interesting argument, but it has flaws.

First, the language "*program, group contract or other arrangement*" in Section 1720 has been understood to encompass Heart and Lung Act benefits in all the above-discussed precedent.

Second, the definition of "program, group contract or other arrangement" that appears in Section 1719(b) is limited to "this section," *i.e.,* Section 1719. 75 Pa. C.S. §1719(b). Notably, Section 1722 uses the phrase "set forth in this subchapter." 75 Pa. C.S. §1722. Had the legislature intended the definition in Section 1719(b) to apply to Section 1720, it could have used the phrase "in this subchapter" as opposed to "in this section." Therefore, even if we accepted the City's construction of Section 1719(b) to exclude a statutory benefit program such as Heart and Lung benefits, it is not dispositive. The definition is limited to use in the application of Section 1719.

Third, the City's emphasis on Section 1719 misses the mark. Section 1720 prohibits subrogation for workers' compensation payments and payments of first party coverages provided under Sections 1711, 1712 and 1715 of the Motor Vehicle Financial Responsibility Law. Section 1719 does not provide a type of first party coverage. It simply establishes the priority of payments where there exists more than one source of payment for the type of first party coverages provided in a policy of motor vehicle insurance. The language "*whether primary*

17

*or excess* under Section 1719" makes the priority directive in Section 1719 irrelevant.[10]

Stated otherwise, Section 1719 has no effect on the scope or meaning of the catch-all phrase "benefits paid or payable by a program, group contract or other arrangement whether primary or excess" set forth in Section 1720. 75 Pa. C.S. §1720. We agree that the purpose of the new phraseology set forth in the 1990 amendment was intended to expand the scope of the anti-subrogation mandate as it existed in 1984. *Housing and Redevelopment Insurance Exchange*, 2012 WL 1985926 at *9.

*Fulmer* explained that the "catch-all phrase 'or benefits paid or payable by a program, group contract or other arrangement' extends the applicability of [Section 1720] to the Heart and Lung Act." *Fulmer*, 647 A.2d at 618. This was *obiter dictum,* but it correctly construes Section 1720. We so hold. The legislature excluded workers' compensation from the anti-subrogation mandate in Section 1720, but it did not exclude Heart and Lung benefits from this mandate. Accordingly, we reject the City's argument that the 1990 amendment to Section 1720 reinstated a public employer's right to subrogate Heart and Lung Act benefits from an employee's tort award arising from a motor vehicle accident.

Alternatively, the City argues that Section 319 of the Workers' Compensation Act authorizes it to subrogate two-thirds of the Heart and Lung Act benefits it paid to Zampogna. Section 319 of the Workers' Compensation Act

---

[10] Section 1719, like the rest of the Motor Vehicle Financial Responsibility Law, has not been amended to reflect Act 44's reinstatement of subrogation rights for workers' compensation benefits. Section 1719 still reads as it did in 1984. Section 1719 establishes a priority scheme that generally makes a policy of motor vehicle insurance primary to other sources of benefits. The introductory language of Section 1719 excludes workers' compensation from this priority scheme. However, Act 44's express repeal of Sections 1720 and 1722 makes this reference to workers' compensation in Section 1719 meaningless.

permits an employer to subrogate against a third party to the "extent of the compensation payable under this article." 77 P.S. §671. The City argues that the word "payable" allows it to subrogate two-thirds of the total amount of Heart and Lung Act benefits, which could be construed as Zampogna's workers' compensation benefits.

The City maintains that the NCP it issued to Zampogna on November 26, 2007, made workers' compensation benefits "payable" to Zampogna. Because the City is self-insured, it did not go through the process of issuing a workers' compensation payment and then have it returned. *Wisniewski,* 621 A.2d at 1113. Instead, it issued Heart and Lung Act benefits in the amount of Zampogna's full salary. However, two-thirds of the Heart and Lung benefits it paid, which is the amount Zampogna could have received under the Workers' Compensation Act, were "payable" to him as workers' compensation benefits.

The argument that the issuance of a NCP transforms Heart and Lung Act benefits into workers' compensation benefits was addressed in *Stermel.* We rejected it, stating:

> Employer paid Heart and Lung benefits during the entire time that Claimant was temporarily disabled by his work injury. Employer's NCP states that "Claimant received salary continuation [under the Heart and Lung Act] in lieu of PA Workers' compensation for period of lost time." This does not, as Employer contends, make Claimant's situation different from the claimant in *Oliver*, who "only received Heart and Lung Benefits." The NCP, which was issued unilaterally by Employer, does not transform Heart and Lung benefits into workers' compensation; they are separate. *For its own reasons, the General Assembly has decided to treat Heart and Lung benefits differently, at least with respect to subrogation from a claimant's tort recovery arising from a motor vehicle accident.*

*Stermel*, 103 A.3d at 883 (internal quotations omitted).

19

We again reject the City's contention. The General Assembly, "for its own reasons," has chosen to treat Heart and Lung Act benefits differently than workers' compensation benefits. *Id.* Here, the City paid Heart and Lung Act benefits to Zampogna for the entirety of his disability. We decline to consider those payments as anything other than what they are: Heart and Lung Act benefits, subrogation of which is prohibited by Section 1720 of the Motor Vehicle Financial Responsibility Law.

In sum, we find that both of the City's arguments fail. The 1990 amendment to Section 1720 of the Motor Vehicle Financial Responsibility Law did not restore a public employer's right to subrogate Heart and Lung Act benefits. Those benefits remain subject to the anti-subrogation mandate of Section 1720. It follows, then, that the City may not subrogate a portion of Heart and Lung Act benefits under the artifice that those benefits are payable as workers' compensation benefits. Likewise, the plaintiff may not include the receipt of Heart and Lung Act benefits as an item of damages in its tort against a third party with liability for a work-related motor vehicle accident.

For these reasons, we affirm the trial court's order granting declaratory judgment in favor of Zampogna.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia,           :
                Appellant           :
                                  :
                v.           : No. 94 C.D. 2017
                                  :
Frank Zampogna           :

# **O R D E R**

AND NOW, this 27th day of December, 2017, the order of the Court of Common Pleas of Philadelphia County dated August 1, 2016 in the above-captioned matter is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia,          :
                    Appellant          :
                                             :
           v.          :  No. 94 C.D. 2017
                                             :  Argued: October 19, 2017
Frank Zampogna          :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE ROBERT SIMPSON, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**CONCURRING OPINION BY**
**SENIOR JUDGE LEADBETTER**          **FILED:  December 27, 2017**


Because I believe that *Stermel v. Workers' Compensation Appeal Board (City of Philadelphia)*, 103 A.3d 876, 878 (Pa. Cmwlth. 2014) was wrongly decided, I must concur in the result only. I believe the City should be able to pursue subrogation for two-thirds of its Heart and Lung payments, the amounts attributable to Workers' Compensation pursuant to its Notice of Compensation Payable, and not be penalized in this regard simply because it is self-insured.


                                        _____
                                        **BONNIE BRIGANCE LEADBETTER,**
                                          Senior Judge