IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Appeal of Khan          :
                                      :   No. 396 C.D. 2024
Appeal of: Amjad Khan       :   Argued: June 3, 2025

BEFORE:   HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE MATTHEW S. WOLF, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON               FILED: June 30, 2025

Amjad Khan (Khan) appeals from the March 26, 2024 order (Trial Court Order) of the Court of Common Pleas of Philadelphia County (Trial Court) that affirmed the July 19, 2023 Decision and Order of the City of Philadelphia Heart and Lung Board of Arbitration (Board) that granted the appeal of the City of Philadelphia (City) seeking to terminate Khan's benefits paid pursuant to what is commonly known as the Heart and Lung Act[1] based on a determination that Khan is no longer temporarily disabled as a result of his injury. Upon review, we affirm the Trial Court Order.

## I. Background and Procedural Posture

The Board adequately summarized the facts underlying the instant matter in its July 19, 2023 Decision and Order (Board Decision) as follows:

---

[1] Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§ 637-638. The Heart and Lung Act provides for the payment of full salary and all medical expenses to police officers and other public safety employees temporarily unable to perform their job because of a work-related injury. *City of Phila. v. Zampogna*, 177 A.3d 1027, 1029 (Pa. Cmwlth. 2017); *see* Section 1(a) of the Heart and Lung Act, 53 P.S. § 637(a).

On September 22, 2020, City of Philadelphia Police Officer [] Khan injured his lower back when a car rear-ended his patrol vehicle. The City recognized the injury as compensable under the Heart [and] Lung Act. [] Khan received medical treatment and remained out of work until March 2021. At that time, Dr. Paul Sedacca, [Khan's] treating Heart [and] Lung panel provider, released him to full duty.

[] Khan performed full-duty police work for approximately five months. Still bothered by his back injury, he requested further treatment. The City referred him to Worknet (the City's workers' compensation clinic) whose doctors found him capable of light duty work. [] Khan transferred care to Heart [and] Lung panel provider Dr. Rocco Costabile of Holmesburg Family Practice. Dr. Costabile took [] Khan out of work and referred him to a specialist for injections that did not resolve his injury.

After Dr. Costabile left the panel, Dr. Richard Berger became [Khan's] primary Heart [and] Lung physician. Dr. Berger left the panel in February 2022, leaving [] Khan without a primary Heart [and] Lung provider for approximately 6 months. [Khan] subsequently resumed care with doctors at Concentra. When a Concentra doctor released him for light duty work, [] Khan went for a chiropractic evaluation and physical therapy at The Injury Care Center. The Injury Care Center is not on the City's panel of Heart [and] Lung providers. The City filed an appeal seeking to terminate [] Khan's Heart [and] Lung Act benefits based on non-compliance, i.e., failing to treat with a panel provider. That appeal became moot when [] Khan resumed treating with a panel physician in November 2022.

On March 18, 2022, the City sent [] Khan to an independent medical examination (IME) with Dr. Amir Fayyazi, a Board-certified orthopaedic surgeon. After a physical examination and a review of records, Dr. Fayyazi found "no evidence of traumatic injury" based on a

2

September 7, 2021 MRI study, that [] Khan was "not a candidate for additional therapy or chiropractic care," and that [Khan's] physical exam was "manipulated and inconsistent." Although he found [Khan] fully recovered from his injury, Dr. Fayyazi recommended a functional capacity evaluation and expressed an interest in comparing the September 2021 MRI to an MRI conducted in December 2020 to evaluate the nature of an annular tear. He concluded that [Khan] was "clearly capable of working with restrictions," i.e., light duty work.

On May 6, 2022, after reviewing the December 2020 MRI, Dr. Fayyazi issued an addendum report. The MRI indicated a "chronic," rather than acute, annular tear. Dr. Fayyazi concluded that [Khan] did not suffer a work-related disc injury. He found that "[t]he mild disc desiccation and small annular tear at L[4]-L5 are degenerative in nature and do not appear to be traumatic." He concluded that [] Khan had suffered a lumbar sprain and strain injury in the work accident and was fully recovered from that injury.

Based on the IME, the City filed an appeal seeking to terminate [] Khan's Heart [and] Lung Act benefits based on full recovery.

In November 2022, [] Khan returned to Dr. Sedacca, who ordered a new MRI and referred him to an orthop[a]edic specialist. The November 2022 MRI had similar findings to the September 2021 MRI. Dr. Sedacca diagnosed a chronic sprain/strain and released [] Khan to light duty work. On January 31, 2023, Dr. Sedacca determined that [Khan] was at maximum medical improvement (MMI). The specialist, Dr. Gregory Schroeder of Rothman Orthopaedics, recommended against surgery and also declared [Khan] at MMI.

Based on the opinions of Drs. Sedacca and Schroeder, the City filed an appeal seeking to terminate [] Khan's Heart

3

> [and] Lung Act benefits based on a finding that his injury is no longer temporary.
>
> The Board [] held hearings on the appeals and heard testimony from [Khan] on September 21, 2022. [] Khan raised several objections to the Heart [and] Lung process collectively bargained for by [Fraternal Order of Police] Lodge #5 [(FOP)] and the City[.] Post-hearing, the parties introduced evidence in the form of medical records and reports and submitted written argument in support of their respective positions.

Board Decision at 1-4.

Following the hearing, the Board entered an Order granting the City's appeal and terminating Khan's Heart and Lung benefits. *See* Board Decision at Order. The Board first denied Khan's challenges to the Heart and Lung procedures based on purported violations of the Heart and Lung Act, the Pennsylvania Constitution, and the Administrative Agency Law,[2] explaining that the Heart and Lung procedures were negotiated by the City and the FOP – the exclusive bargaining representative for Philadelphia Police Department officers – as part of a collective bargaining settlement agreement. *See* Board Decision at 4-6. The Board then denied the City's first appeal based on Khan's full recovery, but granted the City's other appeal based on Khan's injury no longer being temporary. *See* Board Decision at 4-9.

Khan appealed to the Trial Court, which reviewed the record, heard oral argument, and denied Khan's appeal by order dated March 26, 2024. *See* Trial Court Order. Khan timely appealed to this Court.

---

[2] 2 Pa.C.S. §§ 501-508, 701-704.

4

## II. Issues

Khan purports to raise multiple inter-related issues on appeal, which we summarize as follows. Khan claims that the Board failed in the Board Decision to address all issues raised before it and to provide a reasoned explanation of its reasons for terminating his Heart and Lung benefits, which Khan claims is required of the Board pursuant to the Administrative Agency Law. Khan also claims that the Board erred by not sustaining his hearsay objection in relation to the medical evidence presented. Further, Khan claims that the Trial Court employed an incorrect standard of review in reviewing the Board Decision. Finally, Khan claims that the rules and protocols agreed upon between the City and the FOP to be applied to Heart and Lung disputes are unconstitutional.[3]

---

[3] Khan states the purported issues raised in the "Issues Involved" section of his brief as follows:

> 1. Whether the [] Board failed to address all issues raised, and failed to provide a sufficient, reasoned explanation for the decision reached as required by Administrative Agency Law?
>
> 2. Whether the [Trial Court] failed to address the issues raised based on applying an erroneous standard of review, and misinterpreting the errors alleged?
>
> 3. Whether [Khan's] [o]bjection to [h]earsay was required to be [s]ustained?
>
> 4. Whether the tribunals below failed and/or lacked jurisdiction to address Constitutional issues:
>
>> a. The City (and FOP) **unconstitutionally** usurped legislative authority reserved solely to the General Assembly by altering the terms of a Commonwealth statute to restrict injured officers' substantive right to medical treatment to only '*Approved Network Providers*'?

## III. Discussion

We begin by observing that, to the extent they are discernable, Khan's arguments are not clearly presented or developed, thus affecting the Court's ability to meaningfully review the matter and risking waiver of the issues purportedly raised. *See Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."); *Berner v. Montour Township*, 120 A.3d 433, 437 n.6 (Pa. Cmwlth. 2015) (ruling that a party's failure to sufficiently develop an issue in a brief constitutes waiver of the issue); *see also* Pa.R.A.P. 2119(a). We further

---

> b. The City's [Heart and Lung] Rules **unconstitutionally** deprive injured officers of the fundamental right to [d]ue [p]rocess by preventing access to medical experts and evidence to question or refute the City's evidence?
>
> c. The [] Board's procedural rules, failure to apply the Rules and/or absence of rules also fail to protect all parties' fundamental, **constitutional** right to [d]ue [p]rocess?

Khan's Br. at 10 (emphasis in original). The City succinctly counter-stated the issues involved in this appeal as follows:

> 1. Whether the [Trial] Court [] applied the appropriate scope of appellate review to [Khan's] challenge to the Heart and Lung arbitration award?
>
> 2. Whether the rules and protocols agreed upon between the City [] and Fraternal Order of Police to be applied to Heart and Lung disputes are unconstitutional?
>
> 3. Whether [Khan] was denied due process before the [Board]?

City's Br. at 3 (all capitals omitted).

observe that the role of this Court is not to act as counsel for parties. *Commonwealth v. Le*, 208 A.3d 960, 976 n.17 (Pa. 2019) ("It is not [an appellate] Court's function to act as an advocate for the parties."); *see also Commonwealth v. Spotz*, 18 A.3d 244, 262 n.9 (Pa. 2011) (noting that appellate courts need not address an issue where it is impossible to discern exactly what error a party alleges). However, to the extent that they can be discerned, the Court has addressed Khan's arguments.

## A. Standard of Review

Initially, the parties disagree over the appropriate standard of review the Trial Court should have employed to determine this matter. Khan asserts that the Board is a local agency, the decisions of which are subject to Administrative Agency Law on appeal, which requires plenary review to determine whether the necessary facts of the determination are supported by substantial evidence and free of legal error. *See* 2 Pa.C.S. § 704. The City, on the other hand, asserts that, as a creation of a collectively bargained-for agreement between the City and the FOP, the Board is not an administrative or local agency, but instead is a Police and Firemen Collective Bargaining Act (Act 111)[4] arbitration panel, the decisions of which are final and binding per the terms of the collective bargaining agreements between the City and the FOP and subject only to narrow *certiorari* review.

Some brief background is appropriate to begin this discussion. Our Supreme Court has explained that,

> [p]rior to 1968, police officers and firefighters in the Commonwealth had no legal ability to unionize or collectively bargain. In response to a number of illegal strikes throughout the Commonwealth, the General Assembly enacted Act 111. . . which gave police officers

---

[4] Act of June 24, 1968, P.L. 237, No. 111, *as amended*, 43 P.S. §§ 217.1-217.10.

7

and firefighters the ability to unionize and collectively bargain, but at a price: the newly permitted unions would continue to possess no power to strike. The Legislature assured, however, that labor disputes between political subdivisions and the police and fire unions would be resolved quickly and with finality by providing no right of appeal from final disposition of an Act 111 arbitration. 43 P.S. § 217.7(a).[5]

*City of Phila. v. Fraternal Ord. of Police Lodge No. 5 (Breary)*, 985 A.2d 1259, 1266 (Pa. 2009).

Despite Act 111's mandate that no appeal shall be allowed from the decision of an Act 111 arbitration panel, and recognizing "that all decision-making tribunals, including arbitrators, must conduct proceedings in accordance with the mandates of due process under the Pennsylvania and United States Constitutions[,]" our Supreme Court has stated the following regarding the nature of Act 111 arbitration panels and the review of Act 111 arbitration panel decisions:

> Act 111 arbitration panels [] are not administrative agencies or courts. Rather, they are bodies of temporary jurisdiction convened to respond quickly and with absolute finality to a specific labor conflict, and then disperse. Like trial courts, however, arbitration panels have the potential to affect the substantive and

---

[5] Section 217.7(a) of Act 111 provides, in relevant part, that

> [t]he determination of the majority of [a] board of arbitration . . . shall be final on the issue or issues in dispute and shall be binding upon the public employer and the policemen or firemen involved. Such determination shall be in writing and a copy thereof shall be forwarded to both parties to the dispute. No appeal therefrom shall be allowed to any court.

43 P.S. § 217.7(a).

fundamental rights of parties. Thus, and notwithstanding Section 217.7(a), in an Act 111 interest arbitration case, an appeal of an award will lie in the nature of narrow *certiorari,* only to review: (1) a question of jurisdiction; (2) the regularity of the proceedings; (3) questions of excess in the exercise of powers; and (4) constitutional questions. Generally speaking, a plenary standard of review should govern the preliminary determination of whether the issue involved implicates one of the four areas of inquiry encompassed by narrow *certiorari,* thus allowing for non-deferential review. We are bound, however, by all determinations of fact and issues of law not encompassed by the standard of narrow *certiorari,* even if incorrect. Only if we first determine that narrow *certiorari* is implicated, may we then examine the viability of the issued sanction.

*Breary*, 985 A.2d at 1266 (internal citations and quotation marks omitted). Our Supreme Court has further determined that, "to prevent Act 111 arbitration awards from miring down in litigation[,]" and because "[t]here is no indication, either in [] Act [111] itself or in the history of [] Act [111], that the Legislature intended appeals from grievance arbitration awards to be subject to greater judicial involvement than interest arbitration awards[,]" narrow *certiorari* is the proper standard of review for Act 111 grievance arbitration awards as well as interest arbitration awards. *Pa. State Police v. Pa. State Troopers' Ass'n*, 656 A.2d 83, 89 (Pa. 1995).

The Heart and Lung Act does not explicitly establish a forum to challenge an injured police officer's continuing eligibility for Heart and Lung benefits. However, this Court has determined that "disputes regarding entitlement to [H]eart and [L]ung benefits may be resolved through the grievance arbitration process if provided for in a mutually agreed upon [collective bargaining agreement]." *Shaw v. Twp. of Aston*, 919 A.2d 303, 305 (Pa. Cmwlth. 2007).

9

Here, Act 111 covers the City's police officers. The City and the FOP, as the representative of all Philadelphia police officers,[6] created the Heart and Lung Arbitration Panel – the Board – through a process of collective bargaining that resulted in a settlement agreement entered into on October 28, 2003 (Settlement Agreement), under which the parties agreed to amicably settle disputes regarding the City's compliance with the terms of the Heart and Lung Act. *See* Settlement Agreement at 1, Supplemental Reproduced Record (S.R.R.) at 1b. The Settlement Agreement expressly provided for the establishment of "a specially-constituted Board of Arbitration[7] [] to hear all Heart and Lung disputes on an expedited basis." Settlement Agreement at 2, S.R.R. at 2b.[8] The Board is therefore an Act 111

---

[6] The settlement agreement the City and the FOP entered into on October 28, 2003 (Settlement Agreement), recognizes the FOP as "the exclusive bargaining unit for the Fraternal Order of Police, Lodge 5[,]" which covers all the City's police officers. Settlement Agreement at 1, Supplemental Reproduced Record (S.R.R.) at 1b.

[7] The Board herein. The Memorandum of Understanding Providing for Proceedings Before the City of Philadelphia Heart and Lung Act Labor Arbitration Panel (Memorandum of Understanding) entered into between the City and the FOP after the execution of the Settlement Agreement generally identifies the Board as the "Arbitration Panel." *See*, *i.e.*, Memorandum of Understanding at 4, R.R. at 105a.

[8] Specifically, the Settlement Agreement indicated the parties' agreement as to the following with regard to the Board:

a. The Board will be comprised of Arbitrator Thomas McConnell and Arbitrator Ralph Colflesh ("the Arbitrators").

b. Each hearing will be convened before a panel consisting of an Arbitrator, and one member appointed by the FOP and the City respectively (the "Arbitration Panel").

c. The City and the FOP will split the cost of the Arbitrator[s'] services. Each party will bear any costs associated with its own

10

arbitration panel created by collective bargaining between the City and the FOP. Accordingly, "[b]ecause there was a relevant [collective bargaining agreement] created as part of [the S]ettlement [A]greement, and it specifically addressed the manner of resolving disputes of this kind, th[e Trial] Court determined that it had the limited [narrow *certiorari*] scope of review[.]" Trial Court Opinion at 6, R.R. at 180a.

We find no error in this determination. As the Trial Court noted, "the language of the [Settlement A]greement and the [Memorandum of Understanding] dictates that the process for [Heart and Lung] benefits must be resolved according to the process provided in the Collective Bargaining Agreement[]." Trial Court Opinion at 6, R.R. at 180a. As an Act 111 arbitration panel, the Board is neither an administrative agency nor a court. *Breary*, 985 A.2d at 1266. As such, the right to appeal a Board decision is controlled by 43 Pa.C.S. § 217.7(a), which disallows an appeal from an Act 111 arbitration panel's determination. *See* 43 Pa.C.S. § 217.7(a). However, as a practical reality, Pennsylvania's courts have allowed a strictly limited appellate review of arbitration panel determinations. *See City of Phila. v. Int'l Ass'n of Firefighters, Loc. 22*, 999 A.2d 555, 563 (Pa. 2010). As our Supreme Court has noted, "narrow *certiorari* remains the appropriate construct for review of Act 111 arbitration awards." *Id.* The instant arbitration process occurred as a result of the

---

representative on the Panel. Each party will bear its own counsel fees.

d. The parties will agree separately on the governing standards for this Board. If after bargaining in good faith the parties reach impasse on these standards, the Arbitrators named in this paragraph 7(a) will resolve any disputed issues.

Settlement Agreement at 2-3, S.R.R. at 2b-3b.

11

collectively bargained-for agreement between the City and the FOP, of which Khan is a member. This collective bargaining process created the Board and the procedures employed by the Board acting as an arbitration panel over what is effectively the equivalent of an Act 111 grievance arbitration. Khan appears to concede this in his brief. *See* Khan's Br. at 24-25. Accordingly, the Trial Court correctly employed the narrow *certiorari* standard of review of the Board Decision in this matter. *See State Troopers' Ass'n*, 656 A.2d at 89.

## B. Failure of Board to Address Issues Raised

In his brief, Khan purports to argue that the Trial Court identified but failed to address Khan's issues raised on appeal.[9] *See* Khan's Br. at 26. This issue is woefully underdeveloped and nearly incoherent. *See id.* As such, it is waived. *See Johnson.* Even if not waived, to the extent any argument regarding this purported issue could be discerned, the Court would interpret it to be an alternative way of reasserting the level-of-deference argument, discussed above. Additionally,

---

[9] For the record, in his brief in support of his appeal before the Trial Court, Khan identified the following issues as being involved in that appeal:

> 1. Which Pennsylvania Laws govern the City of Philadelphia Heart and Lung Arbitration Board?

> 2. MUST the rule against hearsay apply in [Heart and Lung] proceedings?

> 3. Did the Arbitration Board fail to issue a sufficiently reasoned Decision?

> 4. Are the [Heart and Lung] Rules and Arbitration Procedures Unconstitutional?

Appellant's Brief In Support of Appeal, filed in the Trial Court on January 4, 2024, Original Record, Item 6.

the Trial Court further observed the following, which is applicable with regard to the issues Khan purportedly raised on appeal:

> Regardless of which standard of review is applied, the [Trial] Court has the authority to review the [Board's] decision based on constitutional arguments, which is the primary ground [Khan] raised (both at the time [of the City's appeal seeking termination of Heart and Lung benefits] and on [a]ppeal [to the Trial Court]). However, even where the [Trial] Court has authority to hear a certain type of issue, it cannot exercise that authority where it lacks jurisdiction. When entitlement to [Heart and Lung] benefits is controlled by a [collective bargaining agreement] as to both forum and procedure, the Court of Common Pleas does not have jurisdiction to adjudicate a resulting dispute. *Shaw v. Township of Aston*, 919 A.2d 303, 306 (Pa. Cmwlth. 2007). The [collective bargaining agreement] between FOP, the union of which [Khan] was a member, and the City [] controlled both the forum and procedure for [Heart and Lung] matters. The [collective bargaining agreement] . . . showed that both forum and procedure were addressed, even specifically speaking to the exact issues [Khan] raised. Therefore, th[e Trial] Court lacked jurisdiction to adjudicate on any of [Khan's] arguments and, accordingly, denied the original appeal.

Trial Court Opinion at 6. Under the narrow *certiorari* standard of review, we find no error with the Trial Court's assessment that it lacked jurisdiction to entertain the specific issues Khan raised on appeal. Thus, to the extent Khan alleges the Trial Court failed to address the issues raised on appeal, we find that the Trial Court Opinion adequately addressed the appeal before it within the constraints of the appropriate standard of review for a Heart and Lung arbitration award, discussed *supra*.

13

## C. Procedural and Evidentiary Arguments

The next arguments purportedly raised by Khan in his brief include what appear to be procedural and evidentiary arguments relating to the Board's hearsay rulings, Khan's purported inability to cross-examine medical witnesses, purportedly illegible medical documentation, purportedly incompetent medical opinions, and the purported prevention of Khan from seeing a physician of his choosing at his own expense. *See* Khan's Br. at 27-34. These procedural and evidentiary arguments are, on the whole, incoherent and undeveloped. *See id.* To the extent they are developed, they consist of subjects for the Board that are not reviewable on appeal, as discussed *supra*.

To the extent further discussion is merited, we observe that the Board addressed Khan's procedural arguments by explaining:

> In October 2003, the City [] and FOP Lodge #5, the exclusive bargaining representative for Philadelphia police officers, collectively bargained a Settlement Agreement that created the parties' current Heart [and] Lung system. Paragraph 8(a) of the [Settlement] Agreement requires officers "to be treated by the City's network of workers' compensation providers for all work-related injuries." Paragraph 8(b) requires the City to "add to its medical treatment panel additional doctors and hospitals suggested by the FOP, provided those doctors and hospitals meet the City's medical certification requirements[,] and execute the City's workers' compensation medical provider contract." A 2009 Act 111 Interest Arbitration Award addressed the parties' competing concerns with Paragraph 8(b) by adding the following language[:]
>
> > Provided that the physician is contractually bound by the treatment costs and protocols imposed by the City's Risk Management Department on

14

physicians in the panel of doctors who treat police officers pursuant to the Heart and Lung Act, an officer receiving medical treatment under the Heart and Lung Act may treat with a physician of his or her own choosing.

The parties created the Heart [and] Lung Arbitration Panel through the Settlement Agreement and executed a Memorandum of Understanding [] establishing the standards under which the Panel would operate. In the [Memorandum of Understanding], the parties granted the Panel "authority to decide and resolve all issues arising between and among the parties hereto and the employees represented by the FOP regarding any claim made under this [Settlement] Agreement." It added,

> [t]he Arbitration Panel shall have authority to grant, deny, or modify a claim. The Panel shall have the additional authority to terminate, suspend or modify Heart [and] Lung benefits, rule on the reasonableness and necessity of medical treatment, compel the production of documents, compel the submission to medical examinations, or to order any other action deemed necessary to expedite a fair and final resolution of any claim or petition.

The 2009 Interest Arbitration Award added the following jurisdictional language (since incorporated into the parties' collective bargaining agreement):

> The Heart and Lung Arbitration Panel shall continue to have authority to issue whatever orders are necessary to achieve justice in the administration of the parties' agreement to resolve Heart and Lung Act disputes.

The Administrative Agency Act to which [Khan] refers, presumably Title 2 of the Pennsylvania Code, governs Commonwealth and local government agencies. This

15

Board of Arbitration is not a government agency. The Board exists as a result of the collective bargaining process for police officers and firefighters pursuant to Act 111 of 1968, Act of June 24, 1968, P.L. 237. The Board follows the procedures and standards mutually agreed to by the parties and/or imposed by an interest arbitration panel. Among those procedures, the parties have agreed to a network of medical providers that includes providers recommended by the FOP. The parties have also agreed to allow medical reports in lieu of testimony to be introduced into evidence. The City and the FOP, negotiating on behalf of its members, agreed to those provisions. [Khan], as a member of the FOP, is bound through the collective bargaining relationship to follow those procedures.

Board Decision at 5-6, R.R. at 149a-50a.

The Trial Court correctly observed that it lacked jurisdiction to review Khan's evidentiary claims, which are exclusively for the Board to decide pursuant to the explicit terms of the Settlement Agreement and Memorandum of Understanding.

Further, Khan's procedural arguments lack merit. There is no question in this matter that the City and the FOP, of which Khan is a member, are subject to the terms of the Settlement Agreement, as well as the Memorandum of Understanding that establishes the rules and protocols of arbitrations conducted to determine arbitration disputes between the parties. The Memorandum of Understanding generally provides that "the rules of evidence shall be applied [in Heart and Lung arbitrations under the Memorandum of Understanding] to the same extent and in the same manner as in a labor arbitration."[10] Memorandum of

_____

[10] In the context of labor arbitration, this Court has observed that

16

Understanding at 9, R.R. at 110a. Regarding medical testimony, the Memorandum of Understanding provides:

> (a) Any party may, but is not required to, take the oral deposition of any medical expert or treating physician at any time subsequent to the initiation of proceedings hereunder in order to establish any disputed issue regarding any pending claim. The party taking the deposition shall be solely responsible for the costs/fees of the deposition.

> (b) Unless the Arbitration Panel decides otherwise, such evidence also may be established through the introduction of written reports.

Memorandum of Understanding at 6, R.R. at 107a. The Memorandum of Understanding also provides a mechanism through which a party may object to the proposed evidence of another party, including medical reports. *See* Memorandum of Understanding at 7-8, R.R. at 108a-09a.

Here, Khan availed himself of the opportunity to object to the submission of medical reports in lieu of medical testimony. *See* Preserved Objection to Hearsay (Written Hearsay Objection), R.R. at 79a-86a; *see also* Notes of Testimony, July 27, 2022 (N.T.) at 2-3, R.R. at 8a-9a. The Board overruled Khan's

> [g]enerally, relevant evidence with sufficient indicia of reliability should be admitted. However, the determination of the probative value and reliability of evidence are left to the sound discretion of the arbitrator. And . . . the arbitrator is not bound by the Pennsylvania Rules of Evidence. Therefore, an arbitrator is not precluded from admitting hearsay or unauthenticated evidence.

*AFSCME Dist. Council 88 v. Cnty. of Lehigh*, 798 A.2d 804, 808 (Pa. Cmwlth. 2002) (internal citation omitted).

17

hearsay objection.[11]  *See* N.T. at 2-3, R.R. at 8a-9a.  As discussed *supra*, this evidentiary determination is beyond the scope of the narrow *certiorari* employed for review of the Board's determination.  We further observe, however, that following this ruling, Khan did not attempt to take the deposition of any doctors as provided in the Memorandum of Understanding, and the Board properly considered the medical reports in the Board Decision, as permitted by the Memorandum of Understanding. Khan did not avail himself of the opportunities to question the City's medical witnesses.  Thus, Khan's suggestions that he "was permitted NO expert, [n]o medical evidence and no opportunity to cross-examine the City's experts" are simply untrue.  Khan's Br. at 31.

In reference to Khan's claims that Dr. Sedacca's notes are illegible or unintelligible, we again observe that Khan did not avail himself of the opportunity to take Dr. Sedacca's deposition to clarify the notes or challenge Dr. Sedacca's opinions therein.  We further observe that the claim that Dr. Sedacca's notes are illegible is belied by the fact that the Board understood and utilized Dr. Sedacca's notes and opinions in deciding this matter.  *See* Board Decision at 7-8, R.R. at 151a-52a.  The Board was able to discern Khan's course of treatment with Dr. Sedacca, including Dr. Sedacca's ultimate conclusion that Khan had reached maximum medical improvement, upon which conclusion the Board granted the City's appeal and terminated benefits due to Khan's injury no longer being temporary.[12]  We

---

[11] The Written Hearsay Objection presented the same hearsay objection the Board denied on the record.  *See* Written Hearsay Objection, R.R. at 79a-86a.

[12] Heart and Lung benefits may be terminated once an injury is no longer temporary.  *See Cunningham v. Pa. State Police*, 507 A.2d 40, 44 (Pa. 1986) ("Where a disability is of indeterminate duration and recovery is not projected in the foreseeable future, it cannot be deemed "temporary" within the meaning of the [Heart and Lung] Act.  The Commonwealth has no

18

further observe that the Board, in determining that Khan was not eligible for continuing Heart and Lung benefits because his injury was no longer temporary, also relied on the report of another doctor – Dr. Schroeder – who concurred in Dr. Sedacca's assessment that Khan had reached maximum medical improvement, and whom Khan also did not depose. *See* Board Decision at 8, R.R. at 152a.

To the extent Khan attempts in his brief to reframe and reargue the above evidentiary and procedural arguments as constitutional claims, we reject such claims as duplicative and not meritorious for the reasons discussed *supra*.

**D. Due Process and the Bargained-for Arbitration Protocols**

To the extent Khan challenges the Trial Court Order and underlying Board Decision by arguing that the protocols and rules employed in Heart and Lung arbitrations violate his rights of due process, we observe that, as with his previous arguments, such arguments are undeveloped and incoherent in Khan's brief. Further, as we have observed multiple times *supra*, the rules and protocols employed by the Board for arbitrations of Heart and Lung Act disputes are the result of a negotiated collective bargaining – the Settlement Agreement and attendant Memorandum of Understanding between the City and the FOP. Khan, as a member

---

obligation to provide compensation or to pay medical bills for permanent incapacity."). We observe that even permanent injuries may still be compensable under the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710. *See Duvall v. Dep't of Corr.*, 926 A.2d 1220, 1225 (Pa. Cmwlth. 2007) ("If the injury is determined to be permanent a claimant cannot receive [Heart and Lung benefits] and instead must pursue benefits under the Workers' Compensation Act."); *Heath v. Pa. Bd. of Prob. & Parole*, 869 A.2d 39, 44 (Pa. Cmwlth. 2005) ("If an employee's injury is found to be 'permanent' rather than temporary, that employee should not continue to receive benefits under the Heart and Lung Act but should properly receive workers' compensation benefits.").

19

of the FOP, is bound by the bargained-for procedures for Heart and Lung Act arbitrations.[13]

## IV. Conclusion

For the reasons above, we affirm the Trial Court Order.

       _____

CHRISTINE FIZZANO CANNON, Judge

---

[13] We note that, if Khan disagreed with the arbitration protocols, he had the right to file a breach of fair representation claim against the FOP, which he has not done herein. *See Shaw*, 919 A.2d at 306 n.4.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Appeal of Khan          :
                                  :   No. 396 C.D. 2024

Appeal of: Amjad Khan     :

# **O R D E R**

AND NOW, this 30th day of June, 2025, the March 26, 2024 order of the Court of Common Pleas of Philadelphia County is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge